We will next hear argument in Checkmate Staffing v. Diversified Paratransit. Counsel, you may proceed. Good morning, Your Honor. It's Stephen Wade, appearing on behalf of the appellant. Your Honor, the crux of this case, after which there's very little factual dispute, is that the appellant in this case paid a sum in excess of $489,000, which was to be utilized to supply workers' compensation insurance for the employees that were leased. It was not supplied, and as a result, my client has been damaged in that amount. Well, your argument is that you paid for something you didn't get, so why should you have to pay for it? Exactly. That would be a breach of contract, correct? Not necessarily, Your Honor. That's one of the alternative remedies is breach of contract damages. Well, I'm not asking about remedies. I'm asking about causes of action. If you paid for something you didn't get by agreement and somebody failed to deliver, that's a breach of contract, correct? It does constitute a breach of contract, Your Honor. Is there any other cause of action that might support a claim such as that? It also, again, I'm not sure whether you're talking about a cause of action. I am talking about a cause of action. You're also talking about the rescission and restitution, which is also an available cause of action. Which is an equitable remedy that's available when there's no adequate remedy at law, correct? Correct, Your Honor. And so the question is whether a breach of contract claim would be adequate to make you whole, right? Correct, Your Honor. And so the question is whether you can prove your damages, right? That's correct. And why can't you? Because the damages, particularly with respect to the failure to procure workers' compensation insurance, were at the time of trial unliquidated, speculative, and indeterminable. That is, we had exposure for workers' compensation claims. Those claims, some of them had been filed. Some of them had not yet been filed. They had not been fixed. The cost of defense hadn't been determined. The ultimate liability of my client for those was essentially undeterminable at that time. How do we know what those numbers are? We can't prove what we don't know, Your Honor. What doesn't exist at that point. Why can't we prove it? Counsel, what's bothering me about this case is that when the case was called for trial, your client wasn't ready to proceed and hadn't complied with the court's scheduling deadlines. And so a lawyer rushes in at the last minute and purports to declare herself to be an expert witness to establish damages on the workers' compensation claim. And the trial judge, and I don't think it was an abuse of discretion, said, no, I'm not going to allow this testimony to come in when you didn't comply with all of my pretrial discovery orders. So consequently, you've got a failure proof here that the district court could have been able to answer the question as to what the damages were, but by virtue of the fact that the client wasn't ready to go to trial, there was no evidence of it at the trial. Your Honor, I submit that they could not have done that. And that was an impossible burden to reach. But we don't know that because there was no testimony introduced. But there was no testimony introduced, Your Honor, because there could be no testimony introduced. Well, I'm not sure I can go with you quite that far. Had all the deadlines been met, had counsel fully prepared this case for trial, then we'd have a much different picture of what the damages actually were. But you're handicapped by the fact that the trial court was blindsided by counsel not being ready to proceed. Well, I think counsel was ready to proceed, Your Honor, and counsel was ready to proceed by way of live testimony. And the rules of that particular court required that all testimony be submitted in the form of the direct testimony be submitted in the form of declarations. Well, and she sought to establish herself as an expert, which I assume also means that she would have been required to prepare a report that would have been shared with counsel for the other side well in advance of the trial so that they would have been prepared to meet that expert testimony. That didn't happen because it wasn't done in a timely fashion. Your Honor, I would submit that she did not, she attempted to testify based upon her knowledge of the cases and the existence of the cases. Was she or was she not proffered as an expert? She was not accepted as an expert, and I submit that no expert could have been submitted for that purpose. I thought she was offered as an expert on workers' compensation claims. She was offered as an expert on workers' compensation claims to be able to But she wasn't offered as an expert. not with reference to the damages that could be sustained, only with reference to the nature of the cases that could have been filed. Counselor, you're playing games with me here. If she's testifying as an expert on workers' compensation claims, and if the court is trying to determine what the nature of the claims are  That is an opinion, is it not, as to what the damages would be? It is, Your Honor. So she was being proffered as an expert, and had the court admitted the testimony, she would have given her best estimate of what the exposure was on individual claims, right? I don't know that she could have done that, Your Honor, but Well, we don't know because it wasn't done in a timely fashion. That's the whole problem I have with your argument here. Not to tag team on this, but it sounds that you're saying you didn't work up the case because you couldn't work up the case, right? Not in that respect. The damage aspect of it. Correct, Your Honor. But the record doesn't seem to indicate that there was any presentation as to why you couldn't work it up, because of the fact that the expert that was going to make an attempt, perhaps a futile attempt, wasn't allowed to testify because of a procedural default. And I think the court's hit on the essential element, and that is a futile attempt. There was no way to fix those damages sufficiently at the time of trial so as to meet the standard of damages. And how do we know that on this record? Your Honor, because we know there were cases filed, but there's no way to fix what those damages would have been, what those costs of defense would have been. So that's your opinion, right? Your Honor, I think that shifting it back a little bit, when you buy insurance, what you're by definition buying is freedom from risk, freedom from not knowing, because you don't know what your losses are going to be. And that's what you purchase when you purchase insurance. It's inherent that you don't know what risks are going to be undertaken and what risks are actually going to come to fruition. We didn't know that then. We still don't know that now. And that's the reason that inherently in an insurance contract, the appropriate measure of remedies is to refund the premium that was paid. That's true if you have an insurer. It's true under the California Insurance Code if you are an insurer and you accept a premium and don't provide the coverage. Counsel's argued, well, in this case, we weren't an insurer. We were just someone who was paid to procure insurance. An intermediary. An intermediary who was under contract to procure insurance. The difference between those conceptually, however, is in the cases that are cited in that regard, that person didn't accept the entirety of the premium to procure the insurance. They simply were under contract to procure the insurance and didn't procure it and as a result had damages. Here, our situation is that Checkmate was akin to an insurer. They accepted the entirety of the premium necessary to provide that insurance and failed to provide that coverage and failed to provide the coverage. Was it an insurer or an agent, like an insurance broker, who has a fiduciary obligation to pay over the premium to the insurer so that the insurance coverage is placed? If the broker accepts the entirety of the premium and doesn't procure the insurance, I would submit that he is, in essence, acting as an insurer and is required to remit that under either a theory of unjust enrichment or rescission and restitution is required to remit that premium. To allow that person to retain the premium and have the risk undergone by the person that paid it and have them still retain the premium is outrageous. The analogy doesn't fit perfectly, does it? Because Diversified was also providing staffing. So part of the money that was paid over to them went for wages of the staff workers who were supplied to checkmate as well as premiums to cover workman's compensation. That's right. But the pretrial order stipulates that the amount of the monies that were paid as and for workers' compensation coverage exceeded the amount that was being sought against my client in the underlying actions. So it's at least a wash. Do you want to save any time for rebuttals? Yes, Your Honor. May it please the Court, Sean O'Keefe, appearing on behalf of the appellee checkmate staffing. Your Honor, all the issues that counsel has raised today Will you speak a little louder, please? Yes, Your Honor. All the issues that counsel has raised today were comprehensively addressed by the bankruptcy appellate panel and they were also addressed by the law court. I would note that Your Honor's comments relative to the evidentiary presentation in this case are directly on point. This is a case where the day before the trial, the trial court called to prompt counsel to file declarations. That gave me one day to respond to all of those declarations and to appear at trial and do the best that I could under those circumstances. I would note a couple of points. Ms. Sims' declaration was based 100% on hearsay. There was not a single document attached thereto relative to those claims. So not only was it hearsay, but I had no capacity to review those documents or to cross-examine someone at the hearing simply because they were not in the court. There's no dispute, is there, that your client did not procure workers' compensation insurance for a fixed period of time? There's no dispute, Your Honor. All right. And is there any dispute that you were paid to do that? There's no dispute, Your Honor. So why should you get to keep the money? Your Honor, there's two distinct periods here and this was developed in the record. During the period of time, this was from April of 2002 to November of 2003 is the period of breach that they're talking about, the lack of coverage. In December of 2003... I'm sorry, November of 2002 to what of 2003? My recollection is it was from April of 2002 or shortly thereafter to November of 2003. But in 2003 of December, we obtained coverage. Right. Oh, I understand that. And we obtained coverage... So it was before the contract expired and you obtained coverage. That's exactly right. And the new provider, pursuant to the deposition of Mr. Hunt, contacted Mr. Hunt and said, we are a new provider and we are performing this service. During the next four months, they continued to utilize that service and what we operated as was a PEO. So there was a bundle of services that were provided, one of which was providing coverage. The relevant fact here is for four months, they utilized our services and made no complaint about the preexisting circumstance. Moreover, in December of 2003... So that's why you should be able to keep the money for something you didn't do? No, Your Honor, but the restitution and rescission, which they're arguing under California law had to be raised, and they never raised it. The simple fact is we paid their payroll the last month and they walked away and didn't pay us back for the payroll. So that's the $400,000 in change. Insofar as the damage issue is concerned, conceptually their argument is, well, we paid this and we understand that. But California law is clear. It's the proximate detriment caused by the breach. And what is that in this case? In this case, it's unproven. It is absolutely unproven. This trial occurred three years after the breach, the period of the lack of coverage. At the trial, the totality of their proposed evidence with respect to the claim was seven claims, seven claims, which were not before the court. Two of those claims predated the coverage period. One was against a totally different entity. And if you added those up, that's about 99% of the claim that they were alleging, which was not admitted. So Judge Kwan could alternatively, as opposed to excluding the evidence, as he promptly did, could have said, I'm according no weight to this. And if you look at his analysis, he did both. He went through the evidence and noted the fact that you're introducing evidence before me, which is not here promptly, but I'm going to go through it anyway. And when I do go through it, 95% of it was one claim attributable to an intentional tort that occurred five years before we entered into a relationship. Insofar as the other claims, which were the declaration of Mr. Hunt, 30,000 of the 90,000 that he was purporting to claim as an incompetent witness. He wasn't an accountant. He wasn't a CFO. And he attached the first page of a document, which by itself provided no basis for damages. He simply made the conclusory statement, we are owed $90,000 in lost revenues, which are not compensable under California law in any event. $30,000 of those related to a bus service with independent contractors. So they would never have been covered by the policy. He also admitted in his deposition that that service never made any money. We compensate people under California law for lost profits, not lost revenues. When Judge Kwan could look at that declaration within his discretion and say, wait a minute. You're seeking damages for people who would never have been covered, independent contractors. And insofar as the other component, a single statement referring to a document, which I only get a piece of, the revenue side, I don't get the other five pages, is not sufficient for me to conclude that you have met your burden with reasonable certainty. So he could have excluded either on the weight, on the issue of admissibility, and I would submit that he probably did both. And that was within his discretion. I would also note, insofar as an alternative ground for this Court to affirm, recoupment is an equitable defense. As I noted in my comments, you can't simply lay in the weeds for four months and say nothing relative to a preexisting claim and utilize the benefits and services. It's contemplated under California law that you will promptly raise the demand and thereby seek to vindicate your rights. That's not what these people did. So there would be an independent grounds to deny recoupment simply on that basis. Unless you have anything else, Counsel, I think we have no further questions. No, Your Honor. Thank you. Thank you very much. Counsel will give you a minute in rebuttal. Yes, Your Honors. Counsel has raised an important issue that goes through all of this, and that's the promptness of the rescission, the requirement of a prompt rescission. I would submit that that's under the circumstances. These are unique circumstances, both the economics of the situation and the legality of the situation. Why did your client sleep on its rights for four months and never say a word about this? First of all, Your Honor, there was a bankruptcy pending almost immediately after we found out about this breach. That stopped us from taking any unilateral action to rescind the contract or terminate the contract. It's an executory contract under Section 365. We don't have the right. Secondly, they were performing at that time. They were performing, and our only right would have been by way of an offset at some later date against money if they came after us. We were limited only to recoupment. We could take no affirmative action against them to recover any damages. Thirdly, there was an economic reason. They employed all of our employees for us to, in order to protect our legal rights, force us to terminate all of our employees and, in essence, shut down the business in order to vindicate our rights would have been an unreasonable burden to place on us under the circumstances. Was there a bankruptcy trustee appointed, or was this a debtor in possession? Debtor in possession. Thank you. Thank you, Your Honor. The case just argued is submitted.
judges: Lawson, Hall, Tallman